IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID R. WRIGHT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 12-175-SLR |
| | ) |
| DAVID PIERCE, Warden, and | ) |
| ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents.¹ | ) |

David R. Wright. Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

March 12, 2015
Wilmington, Delaware

---

¹Warden David Pierce has been substituted for former Warden Perry Phelps, an original party to this case. See Fed. R. Civ. P. 25(d).

ROBINSON, District Judge

## I. INTRODUCTION

Currently before the court is David R. Wright's ("petitioner") amended application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 ("application"). (D.I. 1; D.I. 12) For the reasons that follow, the court will deny petitioner's § 2254 application.

## II. BACKGROUND[2]

In December 2007, Robert Steck was the administrator of the Lewes/Rehoboth Beach Moose Lodge. Around 6 a.m. on December 31, 2007, Steck went to the Moose Lodge bar to gather cash and checks to make a bank deposit. Steck gathered approximately $5,000 in cash and $1,270 in checks, placed the money in a bag, set the building's alarm, locked the doors, and left the building. Once outside, Steck was approached by petitioner, who was wearing a ski mask and a hooded sweatshirt, and carrying a shotgun.

Petitioner brandished his shotgun at Steck and demanded that Steck drop his bag, but Steck refused. Petitioner then bludgeoned Steck with the shotgun, and Steck dropped the bag. Petitioner ordered Steck to unlock the door to the Lodge and go back inside. Petitioner followed Steck into the vestibule, ordered him to lie face down on the floor, and proceeded to duct tape Steck's hands and feet together. Petitioner rummaged through Steck's pockets and took his wallet, cell phone, and pocket knife. At that point, the building's audible alarm went off. Petitioner fled, locking the entry door behind him. The Delaware State Police responded within a few minutes of the alarm. By then, Steck had loosened his duct tape bonds and unlocked the door for the police.

---

[2]The facts are summarized from the Delaware Supreme Court's decision on direct appeal. See Wright v. State, 980 A.2d 372, 373-75 (Del. 2009).

Shortly after the robbery, police recovered an abandoned white Dodge Caravan on Log Cabin Hill Road, approximately 1/10 of a mile from the Moose Lodge. At that time, police were unaware of the significance of the Caravan or of any connection to the robbery at the Moose Lodge. The van was towed and, during an inventory search, police found an identification card with petitioner's name and picture in the glove compartment.

On January 28, 2008, the Delaware State Police took petitioner into custody on an unrelated warrant. Prior to the arrest, petitioner had been living in his sister's second home without her knowledge. When petitioner left the home, he left behind personal property including two cell phones. Petitioner's sister collected these belongings, put them in her shed, and granted police access. On one cell phone, police found text messages sent to petitioner's girlfriend that appeared to reference the incident at the Moose Lodge. After reviewing prison phone calls from petitioner to his girlfriend, police recovered a damaged shotgun from under some brush on the side of Log Cabin Hill Road, where the white van had previously been found. A piece of wood found at the Moose Lodge following the robbery matched the damaged part of the shotgun.

The police arrested petitioner for the Moose Lodge robbery on February 20, 2008. Petitioner waived indictment. On March 31, 2008, petitioner was charged by information with: first degree robbery; possession of a firearm during the commission of felony ("PFDCF"); second degree kidnapping; wearing a disguise during the commission of a felony; possession of a deadly weapon by a person prohibited ("PDWBPP"); and third degree assault.

Trial began on November 10, 2008. Petitioner stipulated to being a person prohibited from possessing a deadly weapon, and the State entered a nolle prosequi on the third degree assault charge. At the close of the State's case, defense counsel moved for a judgment of acquittal on the kidnapping charge. The trial judge denied the motion. On November 14, 2008, a Superior Court jury found petitioner guilty of first degree robbery, PFDCF, second degree kidnapping, wearing a disguise during the commission of a felony, and PDWBPP. On January 14, 2009, the Superior Court sentenced petitioner to seventy-four years of imprisonment. The Delaware Supreme Court affirmed petitioner's convictions and sentence on August 19, 2009. *See Wright v. State*, 980 A.2d 373 (Del. 2009).

Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on March 11, 2010, which the Superior Court summarily dismissed on March 17, 2010. *See State v. Wright*, 2010 WL 975577 (Del. Super. Mar. 17, 2010). Petitioner appealed, and the Delaware Supreme Court remanded the matter and ordered the Superior Court to make supplemental findings regarding the claim of ineffective assistance of counsel. On February 22, 2011, the Superior Court issued its supplemental findings, again denying petitioner's Rule 61 motion. *See Wright v. State*, 2011 WL 664124 (Del. Super. Feb. 22, 2011). The Delaware Supreme Court affirmed that judgment on May 23, 2011. *See Wright v. State*, 2011 WL 2020812 (Del. May 23, 2011).

Thereafter, petitioner filed a § 2254 application asserting three grounds for relief: (1) ineffective assistance of trial and appellate counsel; (2) illegal search and seizure of

3

the cell phones in violation of the Fourth and Fourteenth Amendments; and (3) the trial court violated petitioner's due process rights by ruling that the cell phones were abandoned and he, therefore, had no expectation of privacy. (D.I. 1) Petitioner then filed an amended application asserting the following three grounds for relief: (1) trial counsel provided ineffective assistance by failing to conduct an adequate pre-trial investigation and by failing to file a timely motion to suppress the evidence obtained from the cell phone; (2) appellate counsel provided ineffective assistance by failing to challenge trial court's ruling that the evidence obtained from the cell phone was admissible; and (3) the warrantless search and seizure of the evidence from petitioner's cell phone violated his rights under the Fourth and Fourteenth Amendments. (D.I. 12) The State filed an answer, asserting that the amended application should be denied in its entirety as time-barred or, alternatively, because the ineffective assistance of counsel claims do not warrant relief under § 2254(d)(1), and the Fourth Amendment claim fails to assert an argument cognizable on federal habeas review. (D.I. 18)

## III. ONE-YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and it prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. See Holland v. Florida, 560 U.S. 631 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2)(statutory tolling).

Petitioner's original application, dated February 2012, and his amended application, dated June 2012, are both subject to the one-year limitations period contained in § 2244(d)(1). See Lindh v. Murphy, 521 U.S. 320, 336 (1997). However, because the claims in petitioner's amended application relate back to the claims asserted in the original application, the court will use the date of the original application to determine the timeliness of the instant application. See Fed. R. Civ. P. 15(c)(1)(B).

Petitioner does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Therefore, the one-year period of limitations in this case began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final ninety days after the state appellate court's decision. See Kapral v. United States, 166 F.3d 565, 575, 578 (3d Cir. 1999); Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Supreme Court affirmed petitioner's conviction and sentence on August 19, 2009, and he did not seek certiorari review. Therefore, petitioner's conviction

became final on November 17, 2009. To comply with the one-year limitations period, petitioner had to file his § 2254 application by November 17, 2010. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005)(holding that former Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions).

Petitioner, however, filed the instant application on February 7, 2012,[3] four years and nine months after the expiration of the limitations period. Thus, the application is time-barred, unless limitations period can be statutorily or equitably tolled.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

Here, petitioner filed a Rule 61 motion on March 11, 2010. The Superior Court dismissed the motion, and the Delaware Supreme Court affirmed that decision on May 23, 2011. *See Wright*, 2011 WL 2012812. Given these facts, the State contends that

---

[3]Pursuant to the prison mailbox rule, a pro se prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the application is filed in the court. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003); *Woods v. Kearney*, 215 F. Supp. 2d 458, 460 (D. Del. 2002)(date on petition is presumptive date of mailing and, thus, of filing). Applying this rule to the instant case, the court adopts February 7, 2012, as the date of filing because that is the date on petitioner's application.

6

the Rule 61 motion statutorily tolls the period from March 11, 2010 through May 23, 2011. However, according to petitioner, the Delaware Supreme Court issued a mandate regarding its May 23, 2011 decision on June 9, 2011. Thus, petitioner contends that the limitations period should be tolled through June 9, 2011.[4]

There is non-precedential authority to the effect that a state post-conviction proceeding is pending for the purposes of § 2244(d)(2) until the date on which the court of appeals issues a mandate, provided that the state courts view the issuance of a mandate as determining the date of finality, as opposed to the date on which the post-conviction appellate decision was issued. *See, e.g., Payne v. Kemna*, 441 F.3d 570, 571-72 (8th Cir. 2006); *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). The State has not provided any argument regarding the issue, and the court has not found any case law indicating whether Delaware state courts view the date of the decision or mandate as terminating the pendency of a post-conviction appeal. Given the uncertainty surrounding this situation, the court will exercise prudence and view the Rule 61 motion as tolling the limitations period from March 11, 2010 through June 9, 2011.

When petitioner filed his Rule 61 motion on March 11, 2010, 113 days of the limitations period had already expired. The limitations clock started to run again on

---

[4]The state court record does not contain a copy of the Delaware Supreme Court's actual mandate. Rather, it contains a letter from the Delaware Supreme Court to petitioner, stating, "This case was closed when the mandate issued and the record was returned to the Superior Court on June 9, 2011." (D.I. 20, Letter in *Wright v. State*, No.175, 2010, dated June 9, 2011) Given the unclear wording of this sentence, the court cannot determine if the mandate was issued on June 9, 2011 or if the mandate was issued on an earlier date and the record was returned on June 9, 2011. Nevertheless, the court will assume that June 9, 2011 is the date of the mandate.

7

June 10, 2011 and ran the remaining 252 days of the limitations period without interruption until the limitations period expired on February 17, 2012. As such, the application is timely, and the court will review petitioner's claims.

## IV. MERITS

### A. Claims One and Two: Ineffective Assistance of Counsel

In claim one, petitioner contends that trial counsel provided ineffective assistance by failing to conduct a reasonable pre-trial investigation into the search warrant for the cell phones. Specifically, petitioner contends that trial counsel should have filed a timely motion to suppress the information that was retrieved from the cell phone prior to obtaining the search warrant. In claim two, petitioner contends that appellate counsel provided ineffective assistance by failing to argue that the trial court erred in overruling trial counsel's objection to the illegal search and seizure of the cell phone on the basis that the trial court erred in ruling that the cell phones had been abandoned. Petitioner presented these two claims to the Delaware Supreme Court on post-conviction appeal, and that court denied the claims as meritless. Therefore, habeas relief will only be available if the Delaware Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

The clearly established law governing the instant ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003).

Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard when it affirmed the Superior Court's denial of claims one and two. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406.

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of claims one and two as meritless involved a reasonable application of *Strickland*. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *Harrington*

v. *Richter*, 131 S.Ct. 86, 105-06 (2011). In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 1. Claim one: trial counsel's failure to conduct a pre-trial investigation

After reviewing the record, the court concludes that the Delaware Supreme Court's denial of claim one involved a reasonable application of *Strickland*. In his Rule 61 affidavit, defense counsel explains that he considered filing a motion to suppress the evidence obtained from the cell phones, but he "did not believe a motion to suppress had merit based on the information [he] had at the time." (D.I. 20, *Wright v. State*, No.175,2010, State's Ans. Supp. Memorandum, Exh. B., ¶ II) More specifically, trial counsel believed "the cell phones were abandoned property so [petitioner] did not have a reasonable expectation of privacy to their contents." *Id*. Trial counsel's Rule 61 affidavit also explains how he reviewed the search warrant under the "four corners test" prior to trial and concluded that there were no valid suppression issues. *Id*.

In this proceeding, petitioner has not provided anything to dispute trial counsel's or the Delaware Supreme Court's conclusion that cell phones were abandoned. Consequently, when viewed in context with the facts of petitioner's case, counsel's reasons for not filing a motion to suppress the cell phones were reasonable. Additionally, during the trial, counsel properly objected to the admission of the evidence from the cell phone upon learning that Detective Chambers conducted a cursory review of the cell phone to determine ownership prior to applying for a warrant; the fact that the trial court overruled counsel's objection does not mean that counsel performed

deficiently. For all of these reasons, the Delaware Supreme Court reasonably applied *Strickland* in concluding that trial counsel did not perform deficiently by failing to file a motion to suppress the evidence obtained from the pre-warrant search of the cell phone.

In turn, given the trial court's ruling that the cell phones were abandoned and that Detective Chambers' pre-warrant cell phone actions were proper, petitioner cannot demonstrate a reasonable probability that the evidence obtained from the cell phone would not have been admitted but for counsel's failure to file a pre-trial suppression motion. Accordingly, the court will deny claim one for failing to satisfy § 2254(d).

### 2. Claim two: appellate counsel's failure to challenge the trial court's cell phone ruling

An attorney's decision about which issues to raise on appeal are strategic,[1] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). "Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them." *United States v. Turner*, 677 F.3d 570, 577 (3d Cir. 2012).

In claim two, petitioner contends that appellate counsel provided ineffective assistance by failing to argue that the trial court erred in failing to suppress the evidence obtained from the cell phone. This argument is unavailing. In her Rule 61 affidavit,

---

[1] *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

appellate counsel states that she considered raising a claim relating to the admissibility of the cell phone contents, but decided not to because, after reviewing the record and applicable law, she did not believe that there was any chance the Delaware Supreme Court would reverse the trial court's ruling. (D.I. 12 at 69) Given her investigation of the issue under of the applicable law, the court cannot conclude that appellate counsel performed deficiently by not pursuing the cell phone issue on direct appeal.

Additionally, petitioner cannot demonstrate prejudice. The Superior Court based its rejection of the instant ineffective assistance of appellate counsel claim on the fact that an appellate argument regarding the trial court's failure to suppress the evidence from the cell phone would have been meritless, primarily because the trial court ruled that petitioner had abandoned the cell phone and did not have an expectation of privacy. The Delaware Supreme Court affirmed that judgment, and explicitly agreed with the Superior Court's conclusion that petitioner's claims failed "under the *Strickland* standard." *Wright*, 2011 WL 2020812, at *1. Viewing the Delaware Supreme Court's post-conviction appellate decision through the doubly deferential standard applicable in this proceeding, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim two.

Accordingly, the court will deny claim two for failing to satisfy § 2254(d).

### B. Claim Three: Fourth Amendment Violation

In claim three, petitioner contends that the police violated his Fourth Amendment rights by turning on one of the cell phones that was found among the property petitioner's sister handed over to the police, and by reading the text messages in order

12

to determine the owner of the cell phones. The police officer conducting the cell phone search turned the phone off after viewing several text messages that he believed could be incriminating, and applied for a search warrant. Petitioner argues that all the information garnered from the warrantless search should have been suppressed.

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal court cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

In Delaware, a criminal defendant may file a pretrial motion to suppress evidence pursuant to Rule 41 of the Superior Court Rules of Criminal Procedure. *See* Del. Super. Ct. R. Crim. P. 41(f); *State v. Ashley*, 1998 WL 110140 (Del. Super. Jan. 26, 1998). Nothing in the record indicates that petitioner was prevented from filing a Rule 41 suppression motion, and petitioner actually did present his Fourth Amendment argument during his trial, in his Rule 61 motion, and on post-conviction appeal.

Although petitioner contends that he was denied a full and fair opportunity to litigate his Fourth Amendment claim because the Delaware Supreme Court did not specifically address the merits of his instant Fourth Amendment issue in its appellate post-conviction decision, the court is not persuaded. The court construes petitioner's complaint about the Delaware Supreme Court's summary disposition as an allegation that the Delaware State Courts incorrectly rejected petitioner's Fourth Amendment argument. However, an "erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar," because the "full and fair opportunity to litigate" provided in *Stone* only guarantees the right to present a Fourth Amendment claim, not the right to a correct result. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Accordingly, the court will deny claim three as barred by *Stone*.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a

certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

The court has concluded that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 should be denied. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.